[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11312
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00497-MHT-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTONIO LANDAVERDE-CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 19, 2015)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

After pleading guilty, Antonio Landaverde-Cruz ("Cruz") appeals his 57-month sentence for one count of illegal reentry after his 2005 deportation following his 2003 conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).  After review, we affirm.

## I.  DRUG TRAFFICKING OFFENSE UNDER § 2L1.2

On appeal, Cruz contends the district court erred when it increased his offense level by 16 levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i), based on Cruz's 2003 Alabama conviction for trafficking in methamphetamine.[1]  We first review how Cruz's guidelines range was calculated and then the relevant law about the 16-level increase.

At sentencing, the district court calculated a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a).  Over Cruz's objection, the district court added 16 levels, pursuant to § 2L1.2(b)(1)(A)(i), because Cruz was previously deported in 2005 after being convicted of felony methamphetamine trafficking in Alabama and sentenced to 15 years in state prison.  After a 3-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a) and (b), Cruz had a total offense level of 21.  Based on his multiple prior criminal convictions, Cruz was assigned a criminal history category of IV, which yielded an advisory guidelines range of 57 to 71

---

[1]This Court reviews de novo whether a defendant's prior conviction qualifies as a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(A).  United States v. Madera-Madera, 333 F.3d 1228, 1231 n.2 (11th Cir. 2003).

2

months.  Cruz asked for a downward variance to his time served of approximately 6 months, which the district court denied.  The district court imposed a 57-month sentence.

Under § 2L1.2, an illegal reentry defendant receives a 16-level increase in his offense level if he was previously deported after he was convicted of a "drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i).  The commentary to § 2L1.2 defines a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  Id. § 2L1.2 cmt. n.1(B)(iv).

The Alabama statute Cruz was convicted of violating provides, in relevant part, that "[a]ny person who . . . is knowingly in actual or constructive possession of, 28 grams or more of methamphetamine . . . is guilty of a felony, which felony shall be known as 'trafficking in methamphetamine.'"  Ala. Code § 13A-12-231(11)(a).  Cruz argues that this offense is not a "drug trafficking offense" within the meaning of § 2L1.2 because the Alabama statute does not have as an element the intent to distribute.

3

Alabama's scheme of drug possession crimes is a three-tiered classification system based on the amount of drugs possessed, with the least serious offense being simple possession, the next serious being possession with intent to distribute, and the most serious being drug trafficking.  See Ala. Code §§ 13A-5-3(b); 13A-12-211; 13A-12-212; 13A-12-231.  For methamphetamine offenses in Alabama, simple possession is the knowing possession of any amount of a controlled substance, which is a Class C felony with a mandatory minimum prison term of 1 year and 1 day.  Ala. Code §§ 13A-12-212(a)(1), (b); 13A-5-6(a)(3).  Possession with intent to distribute is the knowing possession of between 9 grams and 27 grams of methamphetamine, which is a Class B felony with a mandatory minimum 2-year prison term.  Ala. Code §§ 13A-12-11(c)(6), (d), 13A-5-6(a)(2).  Finally, trafficking in methamphetamine, the crime of which Cruz was convicted, is the knowing possession of 28 grams or more of methamphetamine, which is a Class A felony with a mandatory minimum three-year sentence if the quantity of methamphetamine was between 28 grams and 499 grams.  Ala. Code §§ 13A-12-231(11)(a), (13).

While this Court has not addressed the Alabama drug trafficking statute in regards to U.S.S.G. § 2L1.2, we have addressed Georgia's statute, which is nearly identical.  In United States v. Madera-Madera, 333 F.3d 1228 (11th Cir. 2003), this Court addressed the same argument that Cruz now makes with respect to a Georgia

4

conviction for trafficking in methamphetamine and § 2L1.2 of the Guidelines. Like the Alabama statute here, Georgia's statute defined the offense as the "possession of 28 grams or more of methamphetamine." See Madera-Madera, 333 F.3d at 1231; see also O.C.G.A. § 16-13-31(e). This Court explained that, although the Georgia statute contained no explicit intent to distribute, under Georgia's three-tiered drug offense scheme, it was a more serious offense than either simple possession or possession with intent to distribute, and thus the statute "necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs." Madera-Madera, 333 F.3d at 1231-32.[2] The Madera-Madera court held that the Georgia methamphetamine conviction fell within § 2L1.2's definition of a "drug trafficking offense." Id. at 1233.

This Court subsequently concluded that Madera-Madera dictated that a defendant's Florida offense of trafficking in cocaine by possession of between 200 and 400 grams was a "serious drug offense" under the Armed Career Criminal Act, 924(e)(2)(A)(ii), because Florida's three-tiered scheme was "not materially distinguishable" from Georgia's scheme. United States v. James, 430 F.3d 1150, 1155 (11th Cir. 2005). We explained that Florida's drug trafficking statute, like

---

[2]To the extent Cruz argues that the definition of "drug trafficking offense" in the commentary to § 2L1.2 requires the "intent to distribute" to be an explicit statutory element of the offense, Madera-Madera also rejected this argument, explaining that the Sentencing Commission chose not to define a "drug trafficking offense" by its elements, but instead "by the type of conduct prohibited by the state statute." See Madera-Madera, 333 F.3d at 1233.

Georgia's, "necessarily infers an intent to distribute once a defendant possesses 28 grams or more."  Id.

Accordingly, based on Madera-Madera, we too conclude here that Alabama's drug trafficking statute "necessarily infers an intent to distribute," if at least 28 grams of methamphetamine is possessed and, thus, a conviction under that statute qualifies as a "drug trafficking offense" within the meaning of U.S.S.G. § 2L1.2.  See Madera-Madera, 333 F.3d at 1232.

## II.  DUE PROCESS CLAIM

Cruz argues that, at sentencing, the district court violated his right to due process by considering the government's unproven proffer that Cruz had an outstanding arrest warrant in Florida for his alleged participation in a 2011 methamphetamine sale.

To establish that a defendant's due process rights have been violated by the sentencing court, the defendant must show that: (1) the challenged evidence is materially false or unreliable and (2) it actually served as the basis for the sentence. United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir. 2010).  The defendant bears the burden of proving that the court explicitly relied on the information.  Id.[3]

Here, Cruz cannot carry his burden to establish a due process violation because the record does not show that the district court relied upon the

---

[3]"We review de novo challenges to the constitutionality of a defendant's sentence." Ghertler, 605 F.3d at 1268.

6

government's proffered, but unproven, information about an outstanding warrant. Specifically, Cruz's Presentence Investigation Report ("PSI") stated that: (1) Cruz had a pending charge in Florida for trafficking in amphetamine or methamphetamine based on his delivering a bag of methamphetamine to a confidential informant who was working with a drug task force in August 2011; (2) a "capias" issued on October 2, 2012 for this pending charge; and (3) the probation officer had confirmed that Cruz had the outstanding warrant with the sheriff's office in Florida.

Cruz did not object to the pending charge information in the PSI before or at the beginning of the first sentencing hearing, when the district court asked for objections to the PSI. However, once the government referred to the outstanding warrant in opposing Cruz's request for a downward variance to time served, Cruz objected to the information. Cruz pointed out that the arrest warrant did not issue for over a year and was never served. Cruz further maintained that he was not "the person who they believe committed this offense."

The district court expressed reluctance to vary downward to time served if Cruz had engaged in the very serious conduct alleged in the outstanding warrant. The district court continued the sentencing hearing so that the government could obtain more evidence as to the outstanding warrant. When the sentencing hearing resumed, the government advised the district court that it had contacted the clerk of

the state court and the sheriff's office and confirmed that a detainer was now lodged against Cruz, that Cruz's vehicle had been pulled over for a traffic violation as part of an undercover drug investigation, but the arrest warrant was delayed so that the larger investigation could be developed. The government, however, did not present any evidence to support its contentions. Instead, Cruz submitted a copy of the outstanding arrest warrant, but he continued to insist that he was not the person identified in the warrant.

On appeal, Cruz argues that, because he objected, the government had the burden to prove the disputed information—that he was the person described in the outstanding warrant who participated in the methamphetamine sale to the confidential informant—but the government failed to do so. The problem for Cruz is that, even assuming arguendo that the disputed information was materially false and unreliable, the district court did not refer to it when it denied Cruz's request for a downward variance or when it imposed the 57-month sentence. Rather, the district court explicitly stated that its reasons for denying the downward variance included Cruz's prior 15-year sentence for his 2003 methamphetamine trafficking conviction, his high criminal history category (in which the outstanding warrant had no bearing), and the seriousness of the charged reentry offense. Thus, on the record before us, Cruz has not shown that the outstanding warrant or his alleged participation in a 2011 methamphetamine sale to a confidential informant served as

the basis for his sentence.  See Ghertler, 605 F.3d at 1269.  Accordingly, Cruz's

has not established that the sentencing court violated his due process rights.

For all these reasons, we affirm Cruz's conviction and 57-month sentence.

**AFFIRMED.**